The final case before the court today is GLG Farms LLC v. Brandt Agricultural Products. It is case number 171937 and it is appeal from a district court in North Dakota. Okay, Mr. Ziegler, you want two minutes for rebuttal? Okay, go ahead. May it please the court, my name is Chad Ziegler. I'm joined by my colleague Michael Neustol. We represent the appellate GLG Farms in this matter. This case presents somewhat of the classic case of, in our view, the judge grafting a limitation to the claims that finds no roots in the claims themselves, and a limitation that's not called for by the specification either expressly or somehow manifestly. The limitation in question that was added is quote-unquote between the end walls, as in the claimed assembly has to be disposed between the end walls as opposed to as claimed, which is arranged for mounting on the base wall. We believe that limitation is uncalled for. There's nothing intrinsic about the claim itself. Where else could the assembly be mounted other than between the end walls? It seemed to me that the drive assembly was designed to place on an existing hopper that has existing wheels on it. So if those wheels are on the base walls, then where else can you put this new drive assembly if not on the end walls? Well, first of all, the patent itself is agnostic as to whether or not there are existing wheels on a hopper. And if you'll notice in Figure 4, you have a floating hopper that has no non-driven wheels. The purpose of the patent was to place this drive assembly on hoppers that had existing wheels on them, correct? That's not entirely accurate. That wasn't the only use. That's one contemplation, correct. So you have hoppers that have existing wheels, two to four traditionally, and the idea behind the invention is to establish driven wheels on the hopper. It wasn't to replace those wheels, so the hoppers that have existing wheels, the drive assembly has to go somewhere. But it's not necessarily designed to replace all the wheels on those hoppers. It doesn't speak to whether it's replacing wheels or taking its spot, and it doesn't talk necessarily about maintaining those wheels or not maintaining those wheels. The point is that you have a set of drive systems, twin electric, that operate independently to provide driving motion to the hopper. The claims themselves require that they be arranged for mounting on the base wall, as we've talked about. The disclosure itself talks about the preference for those to be arranged on either side of the centerline of the hopper, and mounts that need to be. As far as the specification, it's fairly clear in the briefing, there's Brandt's contention in support of the judge's opinion that figures two through four and the embodiment of that figure form the boundary of the invention. Whereas it's our contention that figures two through four merely are exemplary and show an example of that embodiment. But there are expressed statements in the specification that say that the hopper drive assembly is positioned between the end walls, right? That's what it's describing in the illustration. Now the preface to that illustration is to describe the invention in terms of one embodiment of the invention. And the fact that it then goes on to describe that illustration in terms of its orientation or placement at that particular location, midway between the base walls, is not of itself limiting. And there's no expressed language in the specification that would dictate that it is so limited. And again, it's within the claims that would require anything other than an arrangement that they be mounted on that base wall, disposed between the end walls in their entirety, or oriented in a certain manner. The evidence that figures two through four are illustrative also come out of the claims themselves. The claims are the original claims set. They went through prosecution without modification. So they hold a sort of special place as being part of the specification. And if you look at claims one through nine, you have a set of claims that breaks up the various components of figures two through four into dependent claims. And the only way that particular illustration would be limiting as far as being the boundary for what can be claimed is to collapse those claims together into a single one. Can you show me anything in the specification where they actually talk about an alternative embodiment? I get the fact that you don't want to be stuck with, you know, the preferred embodiment. But usually what we've got is, you know, you can do it this way, you can do it this way, you can do it this way. This is a single embodiment disclosure. It's spare, admittedly. But there is disclosure that in discussing its preference that it be mounted on either side of the centerline of the hopper. That can be sort of conceptually what's going on in this invention. And again, the illustration of the single embodiment does show it midway between the animals on the base wall in an orientation in which the tires, the motor, and the bracket are all within that boundary. But again, there's a single example that is not of itself dispositive of whether that example is the invention itself. What about the language that says the present invention is designed to be utilized on various types of main augers 20 and should not be limited to the specific design of main auger 20? So that tells us that you have, you've left open the possibility of the main auger in terms of a different formulation. But I don't see anything similar with respect to this other structure. That particular disclosure goes to the ability to make adjustments with respect to this mounting plate and clevis pin. Again, one example is claimed in one dependent claim. And the point of it is to allow you to make adjustments with that specific embodiment to different slopes of hopper, different sizes of hopper, etc. But it doesn't go to whether or not the mounting itself dictates the orientation of the entire assembly itself. So as long as the claim is mounted on the base wall, its orientation outside of, or is being exposed outside of the boundaries of the emblem is still within the scope of the claims. Absent the limitation that was drafted on by the district court. What can we do with the language that says the arrangement of the present invention is shown in figures 2, 3, and 4? You have to look, I think, first at the preface to the discussion of the illustrations. And that is, it says on column 2, lines 34 to 35, that one embodiment of the invention will now be described in conjunction with the accompanying drawings. And I would submit that the use of the definite article in the sentence that you just relayed is merely reflecting the antecedent basis of what's being referred to earlier in the preface to the discussion of the illustration. I would also contend that the arrangement as disclosed in that document refers to the assembly of parts. There is no doubt that based on the fact that these things were broken up, or that the assembly was broken up into dependent claims, would indicate and give notice to the public, as a person of ordinary skill, that this illustration is not the invention itself. What about the language on line 35, column 3? It says, in this arrangement, at a position between the end walls, and it's using the actual language adopted by the court, there is provided a hopper drive assembly for moving the hopper in a direction. And it goes on, there may be provided non-driven wheels on the end walls, or these may be omitted depending on the model. Doesn't that pretty much support the district court's construction? What it's referring to in the context of the package is the prior article, the Haley reference. The fact that in that reference, the disclosure of which is set forth in the background section, and also is depicted in figure 1, shows use of the non-driven wheels in a retro kit that allows a motor which is attached to the swing tube to be mechanically and operably connected to an axle to allow you to drive that particular wheel that existed before. And you'll see in the disclosure as well, when you get to column 4, lines 6 through 10, it describes the use of two different motors to drive the wheels, allows the attachment readily without providing mechanical connections between the wheels, such as chains or the like, which may need to be modified for different types of hoppers. So what is really going on in the context of the package with respect to non-driven wheels is the fact that you are using independently driven wheels added to the hopper to drive it without the need for mechanical connections there between. It doesn't in itself preclude that this system can replace the non-driven wheels in the spot where they exist. In the patent here, you have in the figures, figure 1 in particular, it shows the wheels affixed to an area independently driven. In the case present, what Brandt has, Brandt has some bracketry that we argue is extraneous to the end and base wall, but that's attached, fixed to the base wall through weldments. And that that attachment satisfies the need of claim 1 absent course limitation of there being a boundary formed by the end walls by which the assembly cannot breach, so to speak, in its orientation. Before you run into your rebuttal time, do you want to talk about your DOE claim? Sure. The claim interpretation, again, is sort of a fait accompli. The court interpreted the claims in a way where it would exclude a certain orientation, and then based on that interpretation, it excluded this particular orientation from the claims. And it did so by, number one, contending that that particular orientation, if encompassed by the claims, would run afoul of the prior art. It did not do, the court did not conduct a sort of appropriate analysis to make that particular determination. And again, the fact that the prior art here is distinguished based on mechanical connections, that it had a motor on the swing tube in all cases, has nothing to do with, in the context of the invention, drive assemblies, twin drive assemblies independently located on the hopper. They drive at the corner of the base wall, in the middle of the base wall. It's immaterial. But isn't there a problem if you've got an express structural limitation and then you try to argue that you can just do away with that structural limitation? The express claim limitation is arranged for mounting on the base wall. There's no express limitation that the mounting dictates how the wheel, for example, is oriented. So if the wheel is mounted in the assembly or mounted on the base wall, and the wheel and motor happen to be arranged around the corner, so to speak, toward the end wall, I think would still be encompassed, or still would be encompassed by the claims in this case. And that was part of the DOE case made out by Mr. Fall, our expert. What he did first was to say, okay, the bracketry in question has a structure that's formed through the folding of certain pre-cut pieces of steel and another vertical element that's pre-cut along with the end wall that operate together to form this bracket. If you would imagine a different manufacturing process whereby that bracketry, all of it, including what we call vertical one, was formed of a unitary piece of metal that was formed and then welded to the base wall, that would eviscerate Brandt's argument of this planar notion of vertical one and end wall being coterminous and therefore not part of that bracketry. In which case, it doesn't matter how you orient the wheel and the motor with respect to that bracket. The bracket would clearly be on the base wall. The orientation, as Brandt has it, would still have the wheel and the motor around that bend in the end wall. And yet, no one would argue that that's not a range for mounting on the base wall. The mounting would be clearly on the base wall. From there, Mr. Fall demonstrated that simply because that particular element was formed along with the end wall doesn't mean functionally it's not part of a bracket structure that's welded to the base wall. And it's that bracket structure to which Brandt's device is affixed. So if you would imagine taking the bracket structure as a whole, as a folded unit, and is not part of the end wall pre-cut, but is an independent unit, all you're doing is nudging it over a touch. And you're asking yourself, is that an insubstantial or substantial difference in the context of the invention? The good thing the district court judge recognized was that it didn't have to be, the structure didn't have to be midway between the end walls. He rejected Brandt's argument. But if that's not the case and it's just a millimeter or two off, if it's just a nudge, then it's an equivalent. That was argument one. I like that legal theory, if it's just a nudge, it's an equivalent. You're out of time completely. In fact, you've gone past your time. So I will restore your two minutes for rebuttal. Good morning, and may it please the court. As this court has just noticed, this is a very narrow patent with a very narrow description. Let me first start with a discussion about what GLG would like to call the extraneous limitation of between the end walls. If we look at the claim one. You agree that the district court clearly misunderstood the side edge limitation, right? Because it would read figure three completely out of the patent. Well, I think, I don't know that it, well, in fact, it doesn't matter. The conclusion of non-infringement is still correct. But let me talk about that for a moment, the side edge. You're right, Your Honor, there is a description of the side edge as being 71 and 73 in figure three. But if you look at the description in column three, what it says is that the base wall includes, and I'm at column, at line 26. The base wall includes a front inclined portion and a rear inclined portion where these portions are inclined upwardly and outwardly from a bottom apex to side edges 71 and 73 of the hopper. I'm not sure from that description that the side edge doesn't extend down. It is not Brandt's position that the court's construction, the district court's construction requires the drive assemblies to be right at that very point. You know, the very apex of the inclined portion. I think, in fact, that side edge could come up either inclined wall and that, in fact. But you can't understand those words without the context of the figure, right? Correct, Your Honor, but I don't know that 73, you know, we're always drawing lines that point to a specific point. But in either case, I think that the important piece here is that the drive assemblies have to be mounted on the base wall. And they have to be on those inclined base walls adjacent or near the side edge. Either is fine and it doesn't really change the ultimate judgment. What is important is that they're between the end walls. And where does that come from? It actually comes from claim one. As the district court noted in its opinion, the patent claim makes a distinction between what is a base wall and what is an end wall. If you look in claim one at about line, starting at line 30, it's really defining first what the hopper is. And what the hopper is, it's connected to an outer end of the swing auger. The hopper having a pair of end walls, so we have that. And a base wall interconnecting the end walls, i.e. the base wall has to be between the end walls. And that base wall is defining first and second side edges at right angles to the end walls. So again, those side edges can only be at right angles to both end walls if they're between the end walls. And I think that's what the court is talking about, the district court is talking about. When it requires, so that we define where precisely, based on this description and these claim terms, where precisely do those drive assemblies need to be? And what those drive assemblies, where do they need to be attached? And that's an important piece as well, is where are they actually connected to the hopper? They need to be connected, attached, so they don't fall off on the base wall itself. And that has to be between the end walls. I think there's a key point here, Mr. Ziegler asked you twice to imagine his bracket. And we really do think that GLG's interpretation, frankly, is not unlike Sage, in that they are trying too hard to push a round peg into a square hole. They've got a limited description with limited claims that very precisely define the hopper, very precisely define where those drive assemblies need to be mounted. Do all hoppers have the wheels on the base wall? Base wall, now the base wall is the angled part. No, well, and I won't concede, Your Honor, I'm not a farmer. So in my limited experience, the typical hopper... There can be hoppers with the wheels on the outside of the base wall, correct? Yes, so if you look, Your Honor, at figure one... I know. Yeah, those are undriven wheels, and I understand that to be a typical... So the claim one says a hopper can, excuse me, let's see, a drive kit for attachment to the hopper, for driving movement of the hopper. Yes. Now, I was asking questions of your opponent as to whether this invention is designed to replace existing wheels. If they replace those wheels that are outside of the base wall, then that would not support the court's construction, correct? No, I think it would. I think it wouldn't infringe, though, Your Honor. And in fact, as you noted, if you look at column four of the patent, at about line nine or ten, it says the provision of the separate wheels, and now they're talking about the wheels of the drive assembly, rather than driving the wheels already present, in other words, those four wheels that are at the four corners of the hopper, allows a simple mechanical attachment of the drive wheels without modification to the hopper itself. Right. I mean, it seems like a pretty basic idea. Yes. And it seems like, assuming this happened, but it seems like you guys came up with a pretty simple design around it. Yes. So... Precisely what we think has happened here. Okay. So, but what you're saying is that the fact that we were able to easily design around it is their fault, because they just claimed it in such a limited fashion. They claimed it in a very narrow fashion. They described it in a very narrow fashion. If you read the description... But doesn't the court even further limit that with the construction? In what way, Your Honor? Well, it's forcing everything to go between the two end walls. Well, and I think... Right? Yes. I think that's exactly right. Isn't that further limiting the claim? No, I think that's accurately... No, I'm asking, isn't that further limiting that claim? Limiting it beyond how it's written, Your Honor? Yeah. Limiting the claim. I think it is properly, in my opinion, interpreting the claim as it's properly written. So you have a very precise description of... It forces the invention to go only between the end walls. Yes. And I think that's what... That's what the court's construction does. That's right. But there's nothing in the claim itself that says that. Other than, I think, by defining that the base wall interconnects the end walls, that the edges are at 90 degrees to the end walls, and then, as the court has already noted, by the language, the limiting language in the specification, it does talk about the arrangement of the present invention. And there's much case law out of this court that says, when the language present invention is used, that that can itself be quite limiting, not just in the context of claim construction, but also in the context of the doctrine of equivalence. How do you define adjacent in the claim? I think that without changing the court's overall court construction, and certainly without adjusting the court's judgment, you could say adjustment would be on or near. And I don't think that has any negative impact on the ultimate judgment of non-infringement under the doctrine of equivalence or literally. This is a summary judgment case, right? Yes, it is, Your Honor. So if we find a problem with the claim construction, then it should go back? No, I don't think so, Your Honor. Even if you adopt GLG's proposed construction, which is that it has to be arranged for mounting on the base wall, that's crystal clear, on or near, I think they say near or close to the side edges. Even if we do that, even if this court decides that that's the more appropriate claim construction for a context of literal infringement, there still is no attachment to the base wall. If you look, Mr. Ziegler was trying to describe to you what we call GLG's imaginary bracket, but if you look at Mr. Fall's expert declaration and particularly at, for example, Appendix 2007, you can see that what Mr. Fall is asking this court to imagine is a bracket with the end wall on Brandt's product is in fact a straight piece of metal. There's no break, there's no weld, it's just the straight piece of the metal that's always been there. Then there is a support bracket or what they call a corner brace, a corner brace that's been there since 2001 before the 131 patent was invented and is there admittedly to keep the hopper from twisting. But if you remove that corner bracket, if you're taking Mr. Ziegler's request and imagine removing that corner bracket, the drive assemblies don't fall off. That corner brace is not what's holding the drive assemblies onto the hopper. It's not what's mounting the drive assemblies to the hopper. And so that drive assembly is still mounted on the end wall. And if you want to accept GLG's construction and call that vertical one, that's fine. It's still not on the base wall, which is expressly provided and required by the claims of the patent. Take a look at Figure 1. We haven't talked too much about that. Yes. And you have the base wall, which is 50 and I guess I think it's 50 and wraps all the way around. Okay. Then you have the end wall, which would be 70, correct? 70 and 72, I think, in this figure, Your Honor. And those wheels are outside of the end walls? Yes, they are, Your Honor. Okay, so if this drive assembly, if I'm a farmer and I purchase this drive assembly, and what I want to do is replace those wheels and put the drive assembly there, then I have a drive assembly that's outside of the end walls. Correct. Yes. And, in fact, on Brandt's accused product, what you have to do for those, the two smaller versions have a non-drive, a non-driven version that the farmers can just push. You do actually have to remove what would be wheels at, like, position 54. You have to replace those with the drive assembly. I'm getting confused here. If I do that, if I replace those wheels, then I'm using this invention outside of the end walls. Well, then I would say, Your Honor, you're not using the invention. No, because I can use the invention to replace existing wheels. Well, actually, what the invention does is you don't, one of the beauties of, so first let me tell you, figure one is, It's a prior art. It's prior art, and it is a driven assembly. Okay, so if you look at figure one there, 60 is a motor. Okay, suppose I have a flat on those wheels, and I want to replace that wheel with a drive assembly. It just seems to me that here's, I'm looking at a figure at which I can use this invention, but yet the court's construction has put me outside of that. The court's construction has construed my invention or this invention to mean that these wheels, the replacement, can only go between the end walls. Yes, so figure one is odd in that normally when you have a figure, it is part of the invention, right? I mean, but this figure one is actually from the Healy patent. Yeah, that's a prior, yeah. And so it's not a picture of the invention. Well, it's something I can visualize. Yeah, that's why it's there, I understand. We're talking a lot about lines and angles and parts of structure. Sure. This is not a difficult technology by any means, but this picture really helps a lot. Yes, so let me put And that picture indicates to me that if I want to use this invention, this drive assembly, and I want to replace those wheels, I'll put the drive assembly outside of the end walls. But yet the court has limited, the construction of the court has limited, is forcing me between the end walls. Well, and let me take Right? Yes, I think that's exactly right. Okay. So if you look at figure two, which, by the way, is actually figure two, column two, lines 39 and 40, it says the addition of two drive assemblies of the present invention on the hopper. So notwithstanding the earlier statement at the introduction of the brief description that talks about one embodiment, when you actually get to figure two, which is a description of the, or a depiction rather, of the invention, it very clearly says that the addition of two drive assemblies And the claim says the drive assembly has to be attached to the base, or has to be attached to the base wall, right? Yes, so going back to figure one, and if I can Mounted on the base wall. I beg your pardon? It says mounted on the base wall. Precisely. So if you take figure two, which is the present invention, and you take items 83 or 81 and 80, those are the two drive assemblies, and you see those on figure two, they're on the base wall. They're on that arcuate or V-shaped wall. If, your honor, you were to take those and try to mount them on figure one, where you would mount 80 and 81 would be approximately between, if you see the two wheels, 54 on either side, on kind of the front of the picture, you would mount 80 or 81 on that base wall between those two wheels. That's how you would mount the claimed invention onto the prior art hopper. I see that I'm out of time. Yes, thank you. Any other questions? No. No, thank you. Thank you. All right, two minutes. Thank you, Congress. You know, the district court did two things in its finding of non-infringement. First, it oddly recognized that we had presented evidence that the drive assemblies are mounted to a bracket welded on the base wall of the hopper. It didn't dispute that as a finding. In fact, we put in evidence, and I contend today that that's an issue of fact. The jury, and a reasonable jury, could look at that weldment, which is not just the one piece, as Ms. Schilling described, but the entire U-shaped bracket, including that portion that's uniform with the end wall, as forming a great arrangement for mounting on the base wall. But we were precluded because the court found three things, which it claimed are indisputable. Number one, as we've been talking about, the court found that it wasn't mounted between the end walls. Again, something not required by the claim. The court also found that they weren't mounted on the first and second side edge, which, again, would read out the figures and is virtually an impossibility to manufacture. And lastly, it found that the drive assemblies are not mounted on the base wall. So, Judge Rainier, you posited that the district court judge was narrowing the claims with respect to requiring the drive assemblies to be mounted between the end walls. But he went a step beyond that to say that, despite that they're mounted on this mounting bracket, which is welded to the base wall. Well, it's welded to the base wall, but he made the point is that it's not between the end walls where it's welded to the base wall. That's a separate ground from what he also found was that it wasn't mounted to the base wall, meaning directly to the base wall. And again, there's nothing in the claims that requires that there be direct mounting, that there not be some structure disposed between. And with those limitations that he placed on the claim, he eschewed the evidence we presented on direct infringement. And he also eschewed evidence under the adoption of equivalence court for essentially the same reason. OK. Thank you. Cases will be submitted. This court is adjourned. All rise.